FACKLER, Plaintiff in Error, *vs.* CHAPMAN, Defendant in Error.

1. Under the 35th section of article 9 of the act concerning " crimes and punishments," (R. C. 1845,) if the slaves of several persons unite in the commission of a larceny, the owner of one of the slaves will be liable for all the damages.
2. In an action against a master for a larceny committed by his slave, the *declarations* of the slave, as to where the stolen property might be found, are admissible in evidence, in connection with the *fact* that the property was found at the place mentioned. The declaration may be proved by one witness and the fact by another.
3. Possession of stolen goods recently after the larceny is a circumstance of guilt, the weight of which is for the determination of the jury under all the circumstances.

*Error to Cole Circuit Court.*

This was an action, under section thirty-five of article nine of the act concerning " crimes and punishments, (R. C. 1845,) brought by Fackler in 1851, to recover the value of certain goods alleged to have been stolen from him by two slaves of the defendant.

The facts, as they appeared in evidence, were about these : Certain goods were stolen from the store of the plaintiff, one night in October, 1850. Defendant was then in California. His two slaves were in the possession of William A. Davison, who had hired them. About two weeks after the larceny, the plaintiff received information which led him to go to the house of Davison to make a search. William C. Young accompanied him. They found a portion of the goods at the house of Davison, in a box under a bed in which the slaves slept. The

slaves stated where the other goods could be found, and their statement was written down by the plaintiff. Plaintiff handed this statement to his clerk, McDearmon, who afterwards made search and found portions of the goods at the places specified. He found Mr. Palmer's negroes in possession of some of the goods, and Mr. Stanley's of others.

At the trial, the plaintiff examined Young as a witness, and read the deposition of McDearmon, and this was all the evidence in the case.

Young was asked what the defendant's slaves stated as to where the remainder of the goods could be found, but the court excluded his answer, when it appeared that he did not know that the goods actually were found at the places named by the slaves. The written statement of the declarations of the defendant's slaves was not produced at the trial. McDearmon testified to finding portions of the goods at the places named in the statement.

Portions of the deposition of McDearmon, consisting of the statements of Palmer's negroes and of third parties, were excluded.

The plaintiff asked four instructions, the first and second of which were refused, and the third and fourth given.

The first asserted that possession of part of the stolen goods recently after the loss by the defendant's negroes was *prima facie* evidence that they had stolen the whole, unless such possession was otherwise accounted for.

The second asserted that the defendant was liable for all the goods stolen, not to exceed the value of his slaves, if they aided in the larceny, even though the slaves of other parties might also have aided in it.

At the instance of the defendant, the jury were instructed that the defendant was only liable for the goods actually stolen by his negroes and not for any other.

The court, of its own motion, gave an instruction which is substantially the same as the first instruction asked by the plaintiff and refused, with the following qualification : " This

presumption of guilt from possession, however, ceases as to such articles as were found in the possession of other slaves than the defendant's (recently after the loss,) unless the jury believe from the evidence that such articles were obtained from the slaves of the defendant after they had been stolen.''

There was a verdict for plaintiff for the sum of $26 90, the amount claimed being $115 65.   He sued out this writ of error.

*Parsons*, for plaintiff in error.   1. The court erred in excluding the testimony of Young as to where the remainder of the stolen property might be found.   It was competent to prove such statements by one witness, and prove that they were true by another.   This was admissible to show a guilty knowledge on the part of the slaves.   (Archbold's Crim. Ev. p. 50–1. *Crowther* v. *Gibson*, 19 Mo. Rep. 365.   *Marr* v. *Hill &* *Haynes*, 10 Mo. Rep. 330.)   2. The second instruction asked by plaintiff should have been given.   This action is in the nature of trespass, and trespassers are jointly and severally liable for the whole injury.   (*Commonwealth* v. *Millard*, 1 Mass.) 3. The instruction given by the court, at its own instance, is not the law, as applicable to the facts of this case.

*Edwards*, for defendant in error.   1. Evidence of the statements of the slaves was not admissible against their master, nor was evidence of facts growing out of such statements admissible.   It was objectionable as hearsay testimony, and also as negro testimony.   2. The first instruction asked by plaintiff was properly refused.   The possession was not recent, and besides, the possession of the slave is not evidence against his master ; nor would proof that the defendant's slaves stole a part of the goods render him liable for all of them.   (2 Russ. on Crimes, 123–4, and note *ff.*)   3. The second instruction was properly refused.   If the slaves of defendant and of others stole the goods together, it is not within the meaning of the statute that the defendant should be liable for the whole of them.

Fackler *v.* Chapman.

SCOTT, Judge, delivered the opinion of the court.

This was an action against the defendant in error, under the thirty-fifth section of the ninth article of the act concerning crimes and punishments, to recover damages for property of the plaintiff, alleged to have been stolen by slaves belonging to the defendant.

1. The main question in the case is, whether, if the slaves of several persons unite in the commission of a larceny, the owner of one of the slaves will be liable for all the damages resulting from the wrong. Every larceny includes a trespass. In trespass, all are principals, and each trespasser is liable for the entire damages which may flow from the commission of the injury, although many may be concerned in it. There is no contribution among wrong doers. If the slaves themselves could be sued for the wrong done, this principle, no doubt, would be applicable. Can it make any difference that the action is given against their masters? In case the slaves of several persons unite in the commission of a larceny, if the person injured by the offence was driven to his separate action against each master for the share of property taken by his slave, the difficulty in ascertaining, in such cases, the portion taken by each slave, would make the remedy almost nugatory. As the statute has rendered the master liable for the damages resulting from the larceny of his slave, there can be no hardship, in an action against him, in attaching to the act of the slave the legal consequences which flow from it. If three slaves belonging to different masters unite in a theft of property of the value of one hundred dollars, each one of the slaves, in the judgment of the law, has stolen one hundred dollars' worth of property, and not property worth one-third of that sum, or only such portion of it as he has actually taken and carried away.

2. It can scarcely be necessary to state that such portions of the deposition as merely related to what the witness heard from others were inadmissible. The declarations of the slaves, show-

ing where the stolen property might be found, were evidence, in connection with proof that the property was found at the places mentioned by them. It is not necessary that the declarations of the slaves and the fact that the property was found at the place where it was stated to be, should be proved by the same witness. One witness may testify as to the declarations, and another may prove that the property was found where it was alleged to be. Under this view, there would be no impropriety in admitting the testimony of the witness, Young, if it was shown by another witness that the property was found at the place mentioned by the slaves to him.

The fact that the declarations of the slaves were reduced to writing, is no reason for refusing proof of them, in the absence of such written declarations. It appears that the writing down of the declarations was an extra-judicial act, and altogether voluntary.

We cannot say that the court erred in refusing the plaintiff's first instruction. The fact that the goods stolen were found in the possession of the slaves of the defendant, was a circumstance tending to prove that they were taken by them, the weight of which was a matter proper for the determination of the jury under all the circumstances.

There were words in the instruction given by the court which were scarcely warranted by law. The imputation of theft, arising from the possession of stolen goods, could only arise as to the goods actually in the possession of the thief. If a part of the goods were proved to have been stolen by the slaves, the jury would determine, from the circumstances, whether all the goods lost were not taken at the same time.

Judge Ryland concurring, the judgment will be reversed, and the cause remanded.